Case 8:26-cv-00986-BKS   Document 18   Filed 05/20/26   Page 1 of 16

No. 26-cv-0986

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

---

In re VANDERBILT MINERALS, LLC, *Debtor*.

---

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *Appellant*,

v.

VANDERBILT MINERALS, LLC, *Appellee*.

---

On Appeal from the United States Bankruptcy Court
for the Northern District of New York, No. 26-60110 (WAK)

---

## REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

---

David J. Molton
Jeffrey L. Jonas (*pro hac vice*)
Eric R. Goodman (*pro hac vice*)
D. Cameron Moxley (*pro hac vice*)
Gerard T. Cicero (*pro hac vice*)
Susan Sieger-Grimm (*pro hac vice*)
**BROWN RUDNICK LLP**
Seven Times Square
New York, New York  10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
E-mail: dmolton@brownrudnick.com
         jjonas@brownrudnick.com
         egoodman@brownrudnick.com
         cmoxley@brownrudnick.com
         gcicero@brownrudnick.com
         ssieger-grimm@brownrudnick.com

Kevin C. Maclay (*pro hac vice*)
Todd E. Phillips
Kevin M. Davis (*pro hac vice*)
**CAPLIN & DRYSDALE, CHARTERED**
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
Email: kmaclay@capdale.com
        tphillips@capdale.com
        kdavis@capdale.com

*Counsel for Appellant*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

REPLY ...................................................................................................................2

    A.    A Stay Is Necessary to Prevent Harm to Creditors..............................2

    B.    The Appellant Is Likely to Succeed on the Merits...............................6

    C.    A Stay Is in the Public Interest............................................................9

CONCLUSION .....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman, Tr. for Estate of Michael S. Goldberg, LLC v. LaBonte*,
622 B.R. 503 (D. Conn. 2020)...................................................................6

*In re Bernard L. Madoff Inv. Sec., LLC*,
721 F.3d 54 (2d Cir. 2013) ........................................................................8

*Matter of Buccaneer Res., L.L.C.*,
912 F.3d 291 (5th Cir. 2019) ....................................................................6

*Chamber v. Baltimore & Ohio Ry. Co.*,
207 U.S. 142 (1907).................................................................................10

*Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*,
648 Pa. 604 (Pa. 2018).............................................................................8

*Global Reinsurance Corp. of America v. Century Indemnity Co.*,
22 F.4th 83 (2d Cir. 2021) ........................................................................8

*Grenier v. Med. Eng'g Corp.*,
243 F.3d 200 (5th Cir. 2001) ....................................................................1

*Hanover Nat'l Bank v. Moyses*,
186 U.S. 181 (1902)..................................................................................10

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024)......................................................................4, 7, 9, 10

*Hirschfeld v. Bd. of Elections in City of New York*,
984 F.2d 35 (2d Cir. 1993) ........................................................................6

*In re Kwok*,
172 F.4th 145 (2d Cir. 2026) ....................................................................9

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982)..................................................................................1

*In re Nordlicht*,
115 F.4th 90 (2d Cir. 2024) ......................................................................9

iii

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................1

*Picard v. JPMorgan Chase & Co.*,
    460 B.R. 84 (2011) ...............................................................................7

*In re Purdue*,
    Case No. 7:21-cv-07961-CM (S.D.N.Y. Oct. 10, 2021)....................................10

*Roselink Invs., LLC v. Shenkman*,
    386 F. Supp. 2d 209 (S.D.N.Y. 2005) .................................................................8

*Secrest v. Gibbs*,
    2015-Ohio-42 (Ohio App. Ct. 2015) .................................................................8

*In re SemCrude L.P.*,
    796 F.3d 310 (3d Cir. 2015) .................................................................6

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
    884 F.2d 688 (2d Cir. 1989) .................................................................8, 9

*Syms v. Olin Corp.*,
    408 F.3d 95 (2d Cir. 2005) .................................................................1

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017) .................................................................8, 9

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
    933 F.2d 131 (2d Cir. 1991) .................................................................1

## Other Authorities

Fed. R. App. P. 27(d)(1)(E) .................................................................12

Fed. R. Bankr. P. 8013(f)................................................................................12

Fed. R. Bankr. P. 8013(f)(3) .................................................................12

iv

## INTRODUCTION

State law alter ego, veil-piercing, and successor liability doctrines give talc claimants ***alone*** the right to seek compensation from non-Debtor[1] alter egos and successors for damages suffered by talc claimants.[2]  Such claims include the right to a jury trial.[3]  According to the Supreme Court, the talc claimants' state law claims against the Debtor and non-Debtor affiliates are "constitutionally recognized property interest[s] possessed by each of the plaintiffs."[4]

But under the Bankruptcy Court's ruling, the talc claimants' claims against non-Debtors became the property of their tortfeasor the moment that tortfeasor filed for bankruptcy, without any prior notice.  Further, the Court's ruling means that a tortfeasor in bankruptcy can settle personal injury claims against its non-Debtor affiliates without the affected claimants' consent.

Here, the Debtor appointed a Special Committee of one individual, Mr. Pickering, who negotiated a settlement with Holdings before the bankruptcy

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Appellant's *Motion for Stay Pending Appeal* (the "Motion").  The Debtor, Vanderbilt Holdings ("Holdings"), and Mr. Pickering (collectively, the "Objectors") objected to the Motion.

[2]   *See* Motion at fn. 2.

[3]   *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 136 (2d Cir. 1991).

[4]   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 807, 813 (1985); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).  Claims involving personal injuries become property rights protected by due process guarantees when the injury occurs or is discovered.  *See Syms v. Olin Corp.*, 408 F.3d 95, 107 (2d Cir. 2005); *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 206 n.6 (5th Cir. 2001).

1

case was filed—when the claims that he settled were indisputably the tort claimants' property—to silence the talc claimants. The Objectors assert that *in bankruptcy*, it is acceptable for a Bankruptcy Court to deprive tort victims of their property rights and their right to a jury trial (without their consent) when doing so is predicate to a prearranged sale transaction. They further contend that a stay of the Bankruptcy Court's ruling depriving tort victims of such rights would be improper. In support of this contention, the Objectors make several inaccurate assertions.

**REPLY**

### A.    A Stay Is Necessary to Prevent Harm to Creditors

**First**, the Debtor contends that the Appellant's effort to obtain a stay "is acutely threatening harm to the Debtor's estate and *all* its creditors and other stakeholders." Debtor Br. 3. But a stay is necessary to *prevent* harm to the talc claimants, who comprise the majority of unsecured creditors.

Before the bankruptcy, the talc claimants could assert claims against the Debtor. Due to deliberate prepetition asset-stripping transactions orchestrated by Holdings, the talc claimants cannot recover in full by prosecuting their claims against the Debtor. Before the bankruptcy, the talc claimants also had the right under state law to assert claims exceeding $500 million against the non-Debtor affiliates.

If the Settlement is upheld, the talc claims against the Debtor will remain essentially worthless. The sale transaction is expected to generate $39 million in net

2

proceeds.[5]  This amount is likely to be reduced by administrative costs and post-bankruptcy trust administration, meaning that unsecured creditors will not receive a meaningful recovery from the Debtor.

If the Settlement is upheld, the talc claimants cannot assert certain direct claims against Holdings and non-Debtor affiliates.  Although state law treats claims asserted under the alter ego and veil piercing doctrines as direct claims—*i.e.*, claims to recover damages suffered by the claimant directly—the Bankruptcy Court held that these claims are estate claims in bankruptcy.

All talc claimants would be better off if a stay is granted, the Settlement Order is vacated, and their access to the civil justice system is restored.  Holdings and the Vanderbilt family may be worse off if a stay is granted because the $500 million windfall that they realized because of the Bankruptcy Court's ruling would be put in jeopardy.  But Holdings and the Vanderbilts are not creditors.

**Second**, the Debtor contends that a stay would harm employees.  But the Debtor's business is profitable.  The Debtor never offered a credible explanation as to why it would lay off its employees if Holdings failed to secure a discharge.

Holdings structured the Debtor's case to function like a high-stakes game of chicken.  Holdings manufactured a "three-legged stool" consisting of a request for DIP financing (to impose case milestones to limit discovery), a sale motion (to

---

[5]   *See* May 6, 2026 Hr'g Tr. 42-44.

consummate a sale dependent on the Settlement), and the Settlement (admittedly designed by Holdings to discharge the talc claims that could be asserted against it).

By design, the Settlement Assets the Debtor needed to acquire from Holdings and its affiliates once belonged to the Debtor's predecessor but were kept separate to justify the Settlement. Then the Debtor could threaten the Bankruptcy Court, arguing the Court would be responsible for job losses if it failed to approve any part of Holdings' subterfuge. Allegations of job loss are a red herring.

**Third**, the Debtor contends a stay would result in loss of DIP financing. Debtor Br. 16. But the DIP financing was part of the "three-legged stool," and is a consequence of how Holdings structured this case. Moreover, such an outcome is speculative. If the DIP Lender foreclosed on its collateral—the Debtor's operating assets—outside bankruptcy, it would risk stepping into the Debtor's shoes and becoming fully liable for talc claims under successor theories.

**Fourth**, the Debtor contends a stay would "derail an efficient resolution of the Chapter 11 Case and reduce or eliminate distributions to creditors under a chapter 11 plan." Debtor Br. 17. But the Debtor has yet to file a plan. And the administrative expenses in other talc cases suggest that a paltry amount of the net sale proceeds here will be distributed to unsecured creditors.

This reveals a cruel aspect of the Bankruptcy Court's ruling. In this *Purdue* End Around, the Debtor is permitted to settle personal injury claims based on alter

ego, veil-piercing, and successor liability doctrines without plaintiff input or consent. These claims belong exclusively to tort victims outside bankruptcy.

But as this case shows, not all claimants hold such claims. Under the Bankruptcy Code, priority claims, including administrative expenses, must be paid in full before distributions are made to general unsecured creditors. The Bankruptcy Court sanctioned the settlement of the talc claimants' direct claims against non-Debtors, but the proceeds will not be used to pay the talc claimants who lost their property rights and their right to a jury trial. Instead, they will pay, among others, the Debtor's professionals in the bankruptcy case.

**Fifth**, the Debtor contends a stay would "undermine confidence in the Debtor's restructuring process." Debtor Br. 17. But this contention ignores how that restructuring process came to be.

It is undisputed that (i) RTVC, the Debtor's predecessor, operated as a single entity holding all enterprise assets and liabilities until January 1, 2013; (ii) RTVC restructured in 2012 to separate valuable assets from its talc liability and place operating assets into separate entities; (iii) Holdings orchestrated an intercompany settlement before the Debtor's bankruptcy to wipe over $100 million off the Debtor's balance sheet; and (iv) once in bankruptcy, the Debtor sought Court approval of a pre-negotiated insider settlement designed to deprive talc claimants of claims against non-Debtors, locking in the transfer of value from creditors to equity holders.

5

If a stay of the Bankruptcy Court's ruling sanctioning this conduct would undermine confidence in the Debtor's restructuring process, the Objectors have only themselves to blame.[6]  To the contrary, letting the Settlement stand under these circumstances would undermine public confidence in the bankruptcy system.

### B.      The Appellant Is Likely to Succeed on the Merits

**Sixth**, the Objectors contend that direct and personalized claims held by talc claimants were not impacted by the Settlement.  But the claims asserted by talc claimants under the alter ego, veil piercing, and successor liability doctrines are direct claims.[7]  These claims are not derivative of any harm *suffered* by the Debtor. Rather, they are based on personal injuries *caused* by the Debtor.

Case law distinguishes between direct and derivative claims.[8]  A derivative claim involves an injury suffered by a claimant that is derivative of an injury the debtor suffered directly.  *Id.*  A direct claim involves an injury suffered by a claimant that is not derivative of any injury suffered by the debtor.

The talc claimants' claims arising from harm that they suffered are not derivative of any injury suffered by the Debtor.  As the Supreme Court held in

---

[6]   A party's assertion of irreparable harm cannot be based on harm caused by its own actions. *See Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993).

[7]   *See* Motion at fn. 2.

[8]   *See*, *e.g.*, *Matter of Buccaneer Res., L.L.C.,* 912 F.3d 291, 293 (5th Cir. 2019); *In re SemCrude L.P.*, 796 F.3d 310, 319 (3d Cir. 2015); *Berman, Tr. for Estate of Michael S. Goldberg, LLC v. LaBonte*, 622 B.R. 503, 519 (D. Conn. 2020).

*Peacock v. Thomas*, "[p]iercing the corporate veil is not itself an independent … cause of action, 'but rather is a means of imposing liability ***on an underlying cause of action***.'"  516 U.S. 349, 866 (1996) (emphasis added).

The Debtor could not sue itself for injuries it caused.  It follows that the Debtor lacks standing to seek recovery from alleged alter egos and successors based on such injuries.  State law does not require talc claimants to show the Debtor suffered any injury to hold a party liable as an alter ego or successor.

**Seventh**, the Objectors contend the Bankruptcy Court's ruling does not offend the ruling in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

But the Supreme Court found that the Bankruptcy Code does not permit a debtor to "extinguish" or "bargain away" a tort victim's right to seek recovery from a non-debtor under state law without their consent, "as if" such right is "somehow" the "property" of the tortfeasor's bankruptcy estate.  *Id.* at 219-220.  This is one of the issues before this Court in this appeal.

**Eighth**, the Objectors contend the Bankruptcy Court's ruling does not offend Second Circuit precedent.  But, in *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84 (2011), Judge McMahon rejected as "preposterous" the argument that section 544(a) allows a debtor to assert "the prepetition common law claims of actual creditors," finding that a contrary "reading of section 544(a)" would "render the Supreme Court's decision in *Caplin* a dead letter."  *Id.* at 93-94.  The Second Circuit affirmed

7

and held that a trustee or debtor in bankruptcy cannot assert misconduct claims on behalf of creditors.[9]  The Bankruptcy Court's ruling contradicts this precedent.

The Objectors reliance on *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), and *In re Tronox Inc.*, 855 F.3d 84 (2d Cir. 2017), is misplaced.  Consistent with the ruling in *Butner v. United States* that "[p]roperty interests are created and defined by state law,"[10] the panels in *St. Paul* and *Tronox* based their rulings on an *Erie* guess that Ohio[11] or Pennsylvania law[12] would recognize a cause of action ***for*** alter ego or veil piercing.

Not only did these panels fail to address the laws of ***other*** states,[13] but their *Erie* guesses proved incorrect.  Subsequent rulings by state appellate courts show that Ohio and Pennsylvania law do not recognize causes of action ***for*** alter ego or veil piercing.[14]  Rather, these are remedies that may be invoked only by the holder of an underlying cause of action.  *Id.*

Under the Second Circuit's ruling in *Global Reinsurance Corp. of America v. Century Indemnity Co.*, 22 F.4th 83 (2d Cir. 2021), *St. Paul* and *Tronox* are no longer

---

[9]  *In re Bernard L. Madoff Inv. Sec., LLC*, 721 F.3d 54, 67 (2d Cir. 2013).

[10]  440 U.S. 48, 55 (1979).

[11]  *St. Paul*, 884 F.2d at 703.

[12]  *Tronox*, 855 F.3d at 104.

[13]  Since the tort claims involve the rights of third parties to the corporation, choice of law rules dictates that the law of the state where the injury occurred applies, which is New York. *See Roselink Invs., LLC v. Shenkman*, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2005).

[14]  *See Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 644 (Pa. 2018); *Secrest v. Gibbs*, 2015-Ohio-42 (Ohio App. Ct. 2015).

"binding" because they conflict with subsequent state appellate court rulings on a matter of "state substantive law." *Id.* at 101.

Further, the determinations in *St. Paul* and *Tronox* that alter ego claims were estate property were based on findings that all the debtor's creditors could seek recovery from the alleged alter egos. *St. Paul*, 884 F.2d at 695; *Tronox*, 855 F.3d at 107. Here, the record is clear that **only** talc claimants exposed to RTVC's talc prior to 2008 hold claims against Holdings and its non-Debtor affiliates under alter ego, veil-piercing, and successor liability doctrines. The non-tort creditors identified in the Debtor's schedules, the DIP Lender, and the Debtor's professionals do not hold such claims. Even if the panels in *St. Paul* or *Tronox* purported to adopt a federal common law rule, which they did not, such a rule would not apply here.

The rulings in *In re Kwok*, 172 F.4th 145 (2d Cir. 2026), and *In re Nordlicht*, 115 F.4th 90 (2d Cir. 2024), are distinguishable for the same reason. Critically, in both cases, the Circuit found that all the debtor's creditors could seek recovery under the doctrine of reverse veil piercing. *Kwok*, 172 F.4th at 155; *Nordlicht*, 115 F.4th at 109. Here, the record does not support such a finding. Nor does this case involve the doctrine of reverse veil piercing.

## C.    A Stay Is in the Public Interest

The disagreement over the application of Second Circuit law highlights the need for a stay. When Judge McMahon received the appeal in *Purdue*, she halted

9

(in the face of Second Circuit precedent supporting the confirmation order) any action that could allow the equitable mootness doctrine to prevent the Court from considering an issue of great public importance—namely, whether the Bankruptcy Code authorizes non-consensual third-party releases.[15] This case involves the same issue.

If fundamental rights are protected in bankruptcy (which they are),[16] and if the right to sue in court to seek redress for a bodily injury is a fundamental right (which it is),[17] then the due process protection must protect the right to sue non-Debtors based on an injury that has been suffered, ***regardless*** of whether a tortfeasor desires to consummate a bankruptcy sale transaction.

The Objectors' position presumes that bankruptcy should replace the civil justice system. The Objectors prefer a system in which Mr. Pickering and Holdings decide how much tort claims are worth and the price that non-Debtors must pay to secure a discharge. They prefer a system in which, once a Bankruptcy Court has approved their valuation, no appellate review is possible (even when the Bankruptcy Court applied the wrong legal standard and made erroneous factual findings).

The Bankruptcy Court's ruling renders *Purdue* a dead letter—a decision that can be evaded through pre-bankruptcy restructurings, special committees, and

---

[15]  *See In re Purdue*, Case No. 7:21-cv-07961-CM (S.D.N.Y. Oct. 10, 2021).

[16]  *See Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 (1902).

[17]  *See Chamber v. Baltimore & Ohio Ry. Co.*, 207 U.S. 142, 148 (1907).

rulings that treat the tort victims' direct claims as estate claims.  As in *Purdue*, this Court should foreclose any argument that the doctrine of equitable mootness could prevent the Court from considering this appeal.

## CONCLUSION

The Motion should be granted.

Dated:        May 20, 2026

| | |
|---|---|
| **BROWN RUDNICK LLP** | **CAPLIN & DRYSDALE, CHARTERED** |
| | Kevin C. Maclay (*pro hac vice*) |
| */s/ David J. Molton* | Todd E. Phillips, NY Bar No. 5470950 |
| David J. Molton, NY Bar No. 1867944 | Kevin M. Davis (*pro hac vice*) |
| Jeffrey L. Jonas (*pro hac vice*) | 1200 New Hampshire Avenue NW, 8th |
| Eric R. Goodman (*pro hac vice*) | Floor |
| D. Cameron Moxley (*pro hac vice*) | Washington, DC 20036 |
| Gerard T. Cicero (*pro hac vice*) | Telephone:  (202) 862-5000 |
| Susan Sieger-Grimm (*pro hac vice*) | Facsimile:   (202) 429-3301 |
| Seven Times Square | Email: kmaclay@capdale.com |
| New York, New York  10036 |         tphillips@capdale.com |
| Telephone:  (212) 209-4800 |         kdavis@capdale.com |
| Facsimile:   (212) 209-4801 | |
| Email: dmolton@brownrudnik.com | |
|        jjonas@brownrudnick.com | |
|        egoodman@brownrudnick.com | |
|        cmoxley@brownrudnick.com | |
|        gcicero@brownrudnick.com | |
|        ssieger-grimm@brownrudnick. | |
|        com | |

*Counsel for Appellant*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in this case on May 20, 2026.

/s/ David J. Molton
David J. Molton

## **CERTIFICATE OF COMPLIANCE**

This Reply complies with the type-volume requirements of Federal Rule of Bankruptcy Procedure 8013(f) because this Reply contains 2591 words, excluding the parts of the Reply exempted by Federal Rule of Bankruptcy Procedure 8013(f)(3).   This Reply complies with the typeface requirements of Federal Rule of Appellate Procedure 27(d)(1)(E), as made applicable by Federal Rule of Bankruptcy Procedure 8013(f), because this Reply has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

/s/ David J. Molton
David J. Molton